IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 2 2 2012

JAMES W. McCORMACK, CLERK
By: _____ ㄱ৩৩
DEP CLERK

| | |
|---|---|
| J-MCDANIEL CONSTRUCTION CO., INC. | CASE NO. |
| Plaintiff, | 4.12cm531 BSM |
| v. | |
| MID-CONTINENT CASUALTY COMPANY, SOUTHWEST INSURANCE CENTER CORP., d/b/a INSURANCE CENTER, INC., and JOHN DOES 1 THROUGH 40, | (previously pending in Pulaski County Circuit Court, State of Arkansas as Case No. 60-CV-2012-2277) |
| Defendants. | |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. § 1332(a)(1) and

§ 1441, Defendant Mid-Continent Casualty Company hereby removes to this

Court the state court action pending in the Circuit Court of Pulaski County,

Arkansas, as Case No. 60-CV-2012-2277. As grounds for removal, defendant

states as follows:

This case assigned to District Judge Miller
and to Magistrate Judge Deere

1. On May 11, 2012, Plaintiff, J-McDaniel Construction Co., Inc.,

instituted civil action number 60-CV-2012-2277 in the Circuit Court of Pulaski

County, Arkansas, Sixth Division, styled *J-McDaniel Construction Co., Inc.,*

*Plaintiff, v. Mid-Continent Casualty Company, Southwest Insurance Center*

*Corp. d/b/a Insurance Center, Inc. and John Does 1 through 40, Defendants* by

filing a Complaint against Defendants. A copy of the entirety of the state court

pleadings, attached hereto as Exhibit A and incorporated herein by this

reference, including without limitation:

A-1    Civil Cover Sheet,
A-2    Complaint,
A-3    Summons for Mid-Continent Casualty Company,
A-4    Summons for Southwest Insurance Center Corp. a/k/a Insurance
Center, Inc.,
A-5    Summons for John Does 1 through 40,
A-6    Voluntary Dismissal of Southwest Insurance Center Corp.
       (and transmittal),
A-7    Order of Dismissal of Southwest Insurance Center Corp., and
A-8    Answer of Mid-Continent Casualty Company.

2.     Plaintiff seeks a judgment for amounts expended in defense and settlement of an underlying state court action in Pulaski County, Arkansas, for which it alleges it was entitled to receive insurance coverage but did not. *See* Complaint, Ex. A-2, ¶¶ 6-22 and Prayer.

## I. Timeliness of Removal

3.     Defendant was served with a summons and complaint on August 2, 2012. This Notice is timely filed within 30 days of service of the Summons and Complaint on defendant. *See* 28 U.S.C. § 1446(b); *Brown v. Tokio Marine & Fire Ins. Co.*, 284 F.3d 871, 873 (8th Cir. 2002) ("The law is settled in this Circuit that the thirty-day period to file a notice of removal runs from the time that a defendant is served with the complaint, even when the defendant is a later-served defendant and does not receive service until the time limit during which the first-served defendant could have removed the case has expired."); *accord Marcano Enters. of Kansas v. Z-Teca Rests., L.P.*, 254 F.3d 753, 756-57 (8th Cir. 2001).

## II.  Diversity Jurisdiction Exists

4.      Removal of this action is proper because this Court has original jurisdiction pursuant to 28 U.S.C. § 1332, and may be removed to this Court pursuant to 28 U.S.C. § 1441(b) because it is a civil action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

### A.  Complete Diversity of Citizenship Exists

5.      In its Complaint, Plaintiff alleges the citizenship of the parties as follows:

(a) Plaintiff is an Arkansas corporation having its principal place of business in Little Rock, Pulaski County, Arkansas, Complaint, Ex. A-2, ¶ 1;

(b) Defendant Mid-Continent Casualty Company is an insurance company doing business in and having a registered agent for service of process in the State of Arkansas, *id.* at ¶ 2;

(c) Defendants John Does 1 through 40 are persons/entities whose identity are currently unknown to Plaintiff and its attorneys, *id.* at ¶ 4; and

(d) Defendant Southwest Insurance Center Corp. d/b/a Insurance Center, Inc. was named initially as a party defendant, but was voluntarily dismissed by the plaintiff on August 1, 2012.  *See* Order of Dismissal, Ex. A-7.

6.      Plaintiff is considered a citizen of the State of Arkansas for diversity purposes.  Complaint, Ex. A, ¶ 1;  *see also* 28 U.S.C.  § 1332(c)(1).

7.      Defendant Mid-Continent Casualty Company is not a citizen of Arkansas.  It is an Ohio corporation with its corporate headquarters located in

3

Tulsa, Tulsa County, Oklahoma.  It is, therefore, a citizen of Ohio or Oklahoma for diversity purposes. 28 U.S.C. § 1332(c)(1).

8.      Under 28 U.S.C. § 1441(b)(1), the citizenship of a defendant sued under a fictitious name is ignored for purposes of diversity. The citizenship of the unknown defendants John Does 1 through 40 is, therefore, not part of this analysis.

9.      Complete diversity of citizenship, therefore, exists among Plaintiff and Defendant.

## B.  The Amount in Controversy Exceeds the Required Minimum.

10.     In addition to fulfilling the complete diversity requirement, Plaintiff's Complaint also satisfies the amount in controversy requirement.

11.     Plaintiff alleges that it entered a settlement agreement in sum of $121,675.00, for which it seeks recovery and that it has incurred attorneys' fees in excess of $50,000.00.  Complaint, Ex. A-2, ¶ 15, ¶ 17, & Prayer.  Because the amount of the judgment sought exceeds $75,000, the requisite minimum amount in controversy for purposes of diversity jurisdiction is established.

12.     Pursuant to 28 U.S.C. § 1332, this Court has diversity jurisdiction, and defendant is entitled to remove to this Court based upon that jurisdiction

## III.  Procedural Requirements and Local Rules have been Satisfied.

13.     All of the statutory requirements for removal to this Court under 28 U.S.C. § 1332 and § 1441(a) and (b) have been satisfied.

14.     Pursuant to 28 U.S.C. § 1446(a), Defendant has attached all process, pleadings and orders served upon it to date as part of Exhibit "A."

15.     Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal will be served upon Plaintiff's counsel and filed with the Circuit Court of Pulaski County, Arkansas, Sixth Division.

16.     By filing this Notice of Removal, defendant does not waive any of its affirmative defenses including, without limitation, those listed in Fed. R. Civ. P. 8 and Fed. R. Civ. P. 12(b) including, without limitation, the right to move to dismiss for improper service, insufficient process, insufficient service of process, failure to state a claim, or failure to join a party, all of which are hereby reserved.

WHEREFORE, Defendant Mid-Continent Casualty Company prays that the action pending against it as Case No. 60-CV-2012-2277, in the Circuit Court of Pulaski County, Arkansas, be removed to this Court and for all other relief to which it is entitled.

Respectfully submitted,

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201-3699
(501) 371-0808
FAX:     (501) 376-9422
E-MAIL: elowther@wlj.com
E-MAIL: jhorton@wlj.com

By: _____
    Edwin L. Lowther, Jr. (81107)
    Johnathan D. Horton (2002055)
    *Attorneys for Defendant,*
    *Mid-Continent Casualty Company*


## CERTIFICATE OF SERVICE

On August 22, 2012, a copy of the foregoing was deposited in the U.S. Mail postage prepaid and addressed to:

Wm. Dean Overstreet, Esq.
John D. Pettie, Esq.
Dover, Dixon, Horne PLLC
425 W. Capitol Avenue, Suite 3700
Little Rock, AR 72201
*Attorney for Plaintiff*

_____
Johnathan D. Horton

# Exhibit "A"

ELECTRONICALLY FILED
2012-May-11 10:52:32
60CV-12-2277

**Multiple claims.** If a complaint asserts multiple claims which involve different subject matter division of the circuit court, the cover sheet for that division which is most definitive of the nature of the case should be selected and completed.

## COVER SHEET
## STATE OF ARKANSAS
## CIRCUIT COURT: CIVIL

 To Save a copy of this form to your computer, please click the disk icon on the toolbar above.

The civil reporting form and the information contained herein shall not be admissible as evidence in any court proceeding or replace or supplement the filing and service of pleadings, orders, or other papers as required by law or Supreme Court Rule. This form is required pursuant to Administrative Order Number 8. Instructions are located on the back of the form.

### FILING INFORMATION

County: Pulaski                           District: _____       Docket Number: CV _____

Judge: _____                Division: _____     Filing Date: _____

Plaintiff: J-McDaniel Construction Co., Inc.          Defendant: Mid-Continent Casualty Company, et al.

Attorney Providing Information: John D. Pettie, Esq.      425 W. Capitol Avenue, Suite 3700

☒ Plaintiff   ☐ Defendant   ☐ Intervenor    Address

Litigant, if Pro Se: _____          Little Rock, Arkansas 72201

                                                         Address
Related Case(s): Judge_____        Case Number(s) _____

**Type of Case:**

*Torts*
- ☐ (NM) Negligence: Motor Vehicle
- ☐ (NO) Negligence: Other
- ☐ (BF) Bad Faith
- ☐ (FR) Fraud
- ☐ (MP) Malpractice
- ☐ (PL) Product Liability
- ☐ (OD) Other _____

*Contracts*
- ☒ (IS) Insurance
- ☐ (DO) Debt: Open Account
- ☐ (PN) Debt: Promissory Note
- ☐ (EM) Employment
- ☐ (OC) Other _____

*Equity*
- ☐ (FC) Foreclosure
- ☐ (QT) Quiet Title
- ☐ (IJ) Injunction
- ☐ (PT) Partition
- ☐ (OT) Other _____

*Miscellaneous*
- ☐ (CD) Condemnation
- ☐ (RE) Replevin
- ☐ (DJ) Declaratory Judgment
- ☐ (UD) Unlawful Detainer
- ☐ (IN) Incorporation
- ☐ (EL) Election
- ☐ (FJ) Foreign Judgment
- ☐ (WT) Writs_____
- ☐ (AA) Administrative Appeal
- ☐ (CF) Property Forfeiture
- ☐ (RD) Remove Disabilities
- ☐ (NC) Name Change
- ☐ (OM) Other _____

**Jury Trial Requested:** ☒ Yes ☐ No      **Manner of Filing:** ☒ Original ☐ Re-open ☐ Transfer
                                                   ☐ Return from Federal/Bankruptcy Court

### DISPOSITION INFORMATION

Disposition Date: _____  ☐ Bench Trial   ☐ Non-Trial   ☐ Jury Trial

**Judgment Type:**
- ☐ (DJ) Default Judgment
- ☐ (SJ) Summary Judgment
- ☐ (CJ) Consent Judgment
- ☐ (TJ) Trial Judgment
- ☐ (OJ) Other Judgment
- ☐ (PG) Petition Granted
- ☐ (PD) Petition Denied
- ☐ (DF) Decree of Foreclosure

**Dismissal Type:**
- ☐ (DW) Dismissed with Prejudice
- ☐ (DN) Dismissed without Prejudice

**Other:**
- ☐ (TR) Transferred to Another Jurisdiction
- ☐ (RB) Removed to Bankruptcy Court
- ☐ (RF) Removed to Federal Court
- ☐ (AR) Arbitration

**Judgment For:**
☐ Plaintiff   ☐ Defendant   ☐ Both        Judgment Amount: $ _____

Clerk's Signature _____                Date _____

AOC 23  10-01
625 Marshall Street
Little Rock, AR 72201

Send 1 paper or electronic copy to AOC upon filing.
Send 1 paper or electronic copy to AOC upon disposition.
Keep original in court file.

Effective 1-1-2002

EXHIBIT

A-1

ELECTRONICALLY FILED
2012-May-11 10:52:32
60CV-12-2277

### IN THE CIRCUIT COURT OF PULASKI COUNTY ARKANSAS
_____ DIVISION

| | |
|---|---|
| **J-MCDANIEL CONSTRUCTION CO., INC.** | **PLAINTIFF** |
| **VS.** | **CASE NO. _____** |
| **MID-CONTINENT CASUALTY COMPANY,** | |
| **SOUTHWEST INSURANCE CENTER CORP.,** | |
| **d/b/a INSURANCE CENTER, INC., and** | |
| **JOHN DOES 1 THROUGH 40** | **DEFENDANTS** |

### <u>COMPLAINT</u>

Comes the Plaintiff, J-McDaniel Construction Co., Inc. ("J-McDaniel"), and for its Complaint against Defendants Mid-Continent Casualty Company ("MCC"), Southwest Insurance Center Corp., d/b/a Insurance Center, Inc. ("Insurance Center"), and John Does 1 through 40, states:

1. J-McDaniel is an Arkansas Corporation in good standing having its principal place of business in Little Rock, Pulaski County, Arkansas.

2. Defendant MCC is an insurance company doing business in and having a registered agent for service of process in the State of Arkansas.

3. Defendant Insurance Center is an Arkansas corporation having its principal place of business and registered agent in Pulaski County, Arkansas.

4. Defendants John Does 1 through 40 are persons/entities whose identity is currently unknown to J-McDaniel and J-McDaniel's attorney. An affidavit of same from J-McDaniel's attorney is attached hereto as **<u>Exhibit A</u>** and incorporated herein by reference pursuant to Ark. Code Ann. § 16-56-125(c).

5. Jurisdiction and venue are proper herein.



EXHIBIT

A-2

6. J-McDaniel was for many years involved in the residential construction business in and around Pulaski County, Arkansas. J-McDaniel functioned as a general contractor, and for many years contracted with MCC to provide J-McDaniel with Commercial General Liability Insurance. More specifically, MCC provided J-McDaniel with a Commercial General policy (the "policy") providing insurance coverage to J-McDaniel for the time-period covering the Conrad lawsuit.

7. Insurance Center and John Does 1 through 40 operated as the agents of MCC, and J-McDaniel procured its CGLI policy through said agents. At all times herein, Insurance Center and John Does 1-40 acted in the course and scope of their employment as agents for MCC, and MCC is vicariously liable for all of the acts, errors and omissions of insurance center and John Does 1 through 40.

8. In 2009, J-McDaniel herein was sued by David K. Conrad and Susan E. Conrad who had purchased one of the homes built by J-McDaniel as a general contractor. The case caption of said action is as follows—*David K. Conrad and Susan E. Conrad v. J-McDaniel Construction Co., Inc., John B. McDaniel, and Barbara G. McDaniel*, Pulaski County Circuit Court Case No. 2009-7490 (hereinafter the "Conrad lawsuit").

9. The Conrad lawsuit contained allegations that J-McDaniel had been negligent in construction of the Conrad home, and other causes of action asserting that J-McDaniel was responsible to the Conrads for problems encountered with the home.

10. MCC had issued a policy of insurance effective during the time-period relevant to the Conrad lawsuit, said policy being attached hereto as **Exhibit B** and incorporated herein by reference. The Exhibit A policy of insurance was, at all times, in force for periods of

time pertinent to the Conrad lawsuit, and the Conrad lawsuit allegations, and the subsequent loss, were events covered by the policy.

11. Pursuant to the terms of the CGLI policy, MCC owed J-McDaniel the duty to defend J-McDaniel against the allegations of the Conrad lawsuit and to indemnify J-McDaniel for loss arising out of the Conrad lawsuit.  Stated alternatively, the Conrad lawsuit was a claim covered by the CGLI policy, and J-McDaniel is entitled to benefits provided to it under the policy.

12. The facts and allegations of the Conrad lawsuit triggered both coverage, and MCC's duty to defend J-McDaniel under the CGLI policy.

13. Despite J-McDaniel's repeated requests and demands, MCC repeatedly refused to provide J-McDaniel with legal defense or coverage regarding the allegations of the Conrad lawsuit.

14. Due to MCC's refusal, J-McDaniel was forced to obtain legal defense at its own cost.

15. On November 28, 2011, J-McDaniel herein entered into an agreement in settlement of the Conrad lawsuit, as between David and Susan Conrad and J-McDaniel Construction Co., Inc., for the sum of $121,675.00.  J-McDaniel herein expended considerable funds in consideration of the settlement, release, and dismissal with prejudice of the Conrads' claims, and further incurred significant attorney's fees, all of which MCC should reimburse J-McDaniel as a covered claim.

16. The Conrad lawsuit included two years of difficult litigation involving multiple parties, third-party complaints, cross-complaints, numerous dispositive motions, vast amounts of discovery, and numerous depositions.

17. From the onset of representation through and including the date of this Complaint, J-McDaniel has incurred legal fees well in excess of $50,000.00.

18. Pursuant to Ark. Code Ann. § 16-111-101 et seq. this Court has the power to declare rights, status, on other legal relations between the parties.

19. Pursuant to Ark. Code Ann. § 16-111-111 the Court may make such award of costs as may seem equitable and just.

20. Pursuant to Ark. Code Ann. § 23-79-208 and § 23-79-209, Defendant's failure to pay J-McDaniel's loss within the time specified in the policy after demand was made entitles J-McDaniel to recover the amount of the loss, plus twelve percent (12%) damages on the amount of the loss, together with all reasonable attorney's fees for prosecution and collection of the loss.

21. Defendant has failed to meet its obligation under the CGLI policy, thereby breaching the parties' agreement.

22. Pursuant to Ark. Code Ann. § 16-22-308, the prevailing party on a contract action may be awarded a reasonable attorney's fee to be assessed by the Court and collected as costs.

23. J-McDaniel's construction operation and corresponding insurance needs were well known to Insurance Center and John Does 1 through 40. Insurance Center and John Does 1 through 40 owed J-McDaniel a duty to carry out J-McDaniel's wishes and procure adequate coverage for J-McDaniel's business. However, Insurance Center and John Does 1 through 40 negligently failed to procure adequate and proper coverage for the nature of J-McDaniel's operations. Said failure has resulted in damages to J-McDaniel in

an amount equal to all settlement funds expended by J-McDaniel Construction Co., Inc. in the Conrad Lawsuit, attorney's fees incurred therein, as well as the costs of the present suit and all attorneys' fees incurred herein.

24. J-McDaniel further relied on the representations of Insurance Center and John Does 1 through 40 that a policy of insurance sufficient to protect J-McDaniel's business operation would be procured from MCC.

25. J-McDaniel demands a trial by jury.

WHEREFORE, Plaintiff J-McDaniel Construction Co., Inc. prays for judgment against Defendants in an amount in excess of that amount required for federal diversity jurisdiction, including, but not limited to, reimbursement of all sums paid in settlement, all defense costs, attorney's fees incurred in this action, all costs in this action, a 12% statutory penalty, and all other just and proper relief to which Plaintiff is entitled to receive under law or in equity.

Respectfully submitted,

J-McDaniel Construction Co., Inc., Plaintiff

By its attorneys:

Dover Dixon Horne PLLC
425 West Capitol Avenue, Suite 3700
Little Rock, Arkansas 72201
(501) 375-9151

By: _____

Wm. Dean Overstreet
Arkansas Bar No. 79228
John D. Pettie
Arkansas Bar No. 2009188

**IN THE CIRCUIT COURT OF PULASKI COUNTY ARKANSAS**
_____ **DIVISION**

J-MCDANIEL CONSTRUCTION CO., INC.                                      **PLAINTIFF**

VS.                                    CASE NO. _____

MID-CONTINENT CASUALTY COMPANY,
SOUTHWEST INSURANCE CENTER CORP.,
d/b/a INSURANCE CENTER, INC., and
JOHN DOES 1 THROUGH 40                                      **DEFENDANTS**

### AFFIDAVIT

      I, John D. Pettie, duly licensed attorney practicing with Dover Dixon Horne PLLC, being duly sworn, state upon oath:

1.    That I am attorney for the Plaintiff herein, J-McDaniel Construction Co., Inc.

2.    That the identity of the person, persons, entity, and/or entities named as Defendants John Does 1—40 in the above-captioned case is currently unknown to Plaintiff and Plaintiff's attorney.

3.    That this Affidavit is intended to comply with the requirement of Ark. Code Ann. § 16-56-125 (c) that an Affidavit be filed along with Plaintiff's Complaint when the identity of a tortfeasor or tortfeasors is unknown.

FURTHER AFFIANT SAYETH NOT.

_____
John D. Pettie
Arkansas  Bar No. 2009188


STATE OF ARKANSAS     )
                             )
COUNTY OF Pulaski     )

SUBSCRIBED AND SWORN TO before me this 11th day of May, 2012.

_____
Notary Public

My Commission Expires:
9-30-15

```
ANNE L. SMITH
Notary Public-Arkansas
Saline County
My Commission Expires
September 30, 2015
```

**EXHIBIT**
_A_



# Mid-Continent Group®

MID-CONTINENT CASUALTY COMPANY    MID-CONTINENT ASSURANCE    OKLAHOMA SURETY
P.O. BOX 1409    TULSA, OKLAHOMA  74101-1409    918-587-7221    1-800-722-4994    FAX: 918-588-1295



EXHIBIT
B

BJP 19O-0 (ED. 2/09) GENERAL



# OKLAHOMA SURETY COMPANY
P. O. Box 1409    Tulsa, Oklahoma 74101
POLICY DECLARATION

| | |
|---|---|
| Policy No. | 06-GL-000606600 |
| Renewal of | 06-GL-000573134 |

| Named Insured and Mailing Address | Agent Name and Mailing Address | |
|---|---|---|
| J-MCDANIEL CONSTRUCTION, INC.<br>18 HEATHERBRAE CIRCLE<br>LITTLE ROCK AR 72223 | INSURANCE CENTER INC<br>2207 HIDDEN VALLEY DR. #203<br>LITTLE ROCK AR 72212-4163 | 03-0188 |

Policy Period: From **10/05/2005**  To **10/05/2006**  at 12:01 A.M. Standard Time at your mailing address as shown above.

Business Description: **RESIDENTIAL CONTRACTOR**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THIS POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A PREMIUM IS INDICATED. THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

|  | PREMIUM |
|---|---|
| COMMERCIAL GENERAL LIABILITY COVERAGE PART | $    4,752 |
| OWNERS AND  CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART | $ |
| PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART | $ |
| RAILROAD PROTECTIVE LIABILITY COVERAGE PART | $ |
| TOTAL | $    4,752 |

REPORTING BASIS: **ANNUAL**

**Form(s) and Endorsement(s) made a part of this policy at this time\*:**

| | | | | | |
|---|---|---|---|---|---|
| CG0300(01/96) | CG2134(01/87) | CG2234(07/98) | CG2294(10/01) | ML1001(05/99) | ML1217(04/01) |
| CG2135(10/01) | ML1439(04/97) | ML1344(03/97) | MI9046(05/01) | IL0231(07/02) | IL0021(07/02) |
| IL0017(11/98) | CG2608(04/90) | CG2426(07/04) | CG2196(03/05) | CG2147(07/98) | CG0067(03/05) |
| CG0001(12/04) | ML1003(09/04) | | | | |

\*Omits applicable Forms and Endorsements if shown in specific Coverage Part/Coverage Form Declarations.

Countersigned at: **LITTLE ROCK AR**
Date:                  08/04/2005

By _____
Authorized Representative

ML 14 87 (01 97)

INSURED COPY

## COMMERCIAL GENERAL LIABILITY COVERAGE PART

### DECLARATION

Policy No.    06-GL-000606600

Effective Date: 10/05/2005    **
12:01 A.M. Standard Time

**LIMITS OF INSURANCE**

| | | |
|---|---|---|
| General Aggregate Limit (Other Than Products - Completed Operations) | $ 1,000,000 | |
| Products-Completed Operations Aggregate Limit | $ 1,000,000 | |
| Personal and Advertising Injury Limit | $ 500,000 | |
| Each Occurrence Limit | $ 500,000 | |
| Damage to Premises Rented To You | $ 100,000 | Any One Premises |
| Medical Expense Limit | $ EXCLUDED | Any One Person |

**BUSINESS DESCRIPTION AND LOCATION OF PREMISES**

Form of Business: CORPORATION

Business Description*: RESIDENTIAL CONTRACTOR

Location of All Premises You Own, Rent or Occupy:

**PREMIUM**

| Location Classification | Code No. | Premium Basis A)Area P)Payroll S)Gross Sales C)Cost U)Per Unit T)See Desc. | | Rate Pr/Co | All Other | Advance Premium Pr/Co | All Other |
|---|---|---|---|---|---|---|---|
| **ARKANSAS** | | | | | | | |
| Contractors - subcontracted work - in connection with building construction, reconstruction, repair or erection - one or two family dwellings | 91583 | C) | 200,000 | 6.825 | 3.036 | 1,365. | 607. |
| Carpentry - construction of residential property not exceeding three stories in height | 91340 | P) | 20,000 | 41.724 | 31.385 | 834. | 628. |
| Contractors - Executive Supervisors or Executive Superintendents | 91580 | P) | 24,000 | incl. | 54.908 | incl. | 1,318. |
| Products -completed operations are subject to General Aggregate Limit | | | | | | | |

| Minimum Premiums | | |
|---|---|---|
| All Other | $ | 296 |
| Pr/Co | $ | 462 |
| Policywriting | $ | 100 |

Total Advance Premium    $ 2,199.    $ 2,553.

**FORMS AND ENDORSEMENTS (other than applicable Forms and Endorsements shown elsewhere in the policy)**

Forms and Endorsements applying to the Coverage Part and made part of this policy at time of issue:

*Information omitted if shown elsewhere in the policy.                    **Inclusion of date optional.
These declarations are part of the policy declarations containing the name of the insured and the policy period.

ML 15 07 (09 01)

POLICY NUMBER: 06-GL-000606600

**COMMERCIAL GENERAL LIABILITY**
CG 03 00 01 96

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY INSURANCE

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Coverage | Amount and Basis of Deductible | |
|---|---|---|
| | PER CLAIM | or PER OCCURRENCE |
| Bodily Injury Liability | $ | $ |
| OR | | |
| Property Damage Liability | $  1000 | $ |
| OR | | |
| Bodily Injury Liability and/or Property Damage Liability Combined | $ | $ |

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

**APPLICATION OF ENDORSEMENT** (Enter below any limitations on the application of this endorsement. If no limitation is entered, the deductibles apply to damages for all "bodily injury" and "property damage", however caused):

A. Our obligation under the Bodily Injury Liability and Property Damage Liability Coverages to pay damages on your behalf applies only to the amount of damages in excess of any deductible amounts stated in the Schedule above as applicable to such coverages.

B. You may select a deductible amount on either a per claim or a per "occurrence" basis. Your selected deductible applies to the coverage option and to the basis of the deductible indicated by the placement of the deductible amount in the Schedule above. The deductible amount stated in the Schedule above applies as follows:

  1. **PER CLAIM BASIS.** If the deductible amount indicated in the Schedule above is on a per claim basis, that deductible applies as follows:

     a. Under Bodily Injury Liability Coverage, to all damages sustained by any one person because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages sustained by any one person because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages sustained by any one person because of:

   (1) "Bodily injury";

   (2) "Property damage"; or

   (3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence".

If damages are claimed for care, loss of services or death resulting at any time from "bodily injury", a separate deductible amount will be applied to each person making a claim for such damages.

With respect to "property damage", person includes an organization.

CG 03 00 01 96         Copyright, Insurance Services Office, Inc., 1994                    **Page 1 of 2**    ☐

3

2. **PER OCCURRENCE BASIS.** If the deductible amount indicated in the Schedule above is on a "per occurrence" basis, that deductible amount applies as follows:

a. Under Bodily Injury Liability Coverage, to all damages because of "bodily injury";

b. Under Property Damage Liability Coverage, to all damages because of "property damage"; or

c. Under Bodily Injury Liability and/or Property Damage Liability Coverage Combined, to all damages because of:

(1) "Bodily injury";

(2) "Property damage"; or

(3) "Bodily injury" and "property damage" combined

as the result of any one "occurrence", regardless of the number of persons or organizations who sustain damages because of that "occurrence".

C. The terms of this insurance, including those with respect to:

1. Our right and duty to defend the insured against any "suits" seeking those damages; and

2. Your duties in the event of an "occurrence", claim, or "suit"

apply irrespective of the application of the deductible amount.

D. We may pay any part or all of the deductible amount to effect settlement of any claim or "suit" and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

Copyright, Insurance Services Office, Inc., 1994

CG 03 00 01 96   □

*4*

POLICY NUMBER: 06-GL-000606600                    COMMERCIAL GENERAL LIABILITY

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DESIGNATED WORK

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Description of your work:**
**All Operations in the states of CA, NV and WA**
**Residential Construction Including but not limited to Single**
**Family, Multi Family, Condominiums, Townhouses, and**
**Apartments in the states AZ, CO, DE, HI, IL, LA, NJ, NY, OH**
**SC, and WI**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

This insurance does not apply to "bodily injury" or "property damage" included in the "products-completed operations hazard" and arising out of "your work" shown in the Schedule.

CG 21 34 01 87                    Copyright, Insurance Services Office, Inc., 1986                    Page 1 of 1        ▢

POLICY NUMBER:  06-GL-000606600

**COMMERCIAL GENERAL LIABILITY**
**CG 21 35 10 01**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – COVERAGE C – MEDICAL PAYMENTS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**Description And Location Of Premises Or Classification:**

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

With respect to any premises or classification shown in the Schedule:

1. Section I – Coverage **C** – Medical Payments does not apply and none of the references to it in the Coverage Part apply: and

2. The following is added to Section I – Supplementary Payments:

   h. Expenses incurred by the insured for first aid administered to others at the time of an accident for "bodily injury" to which this insurance applies.

**CG 21 35 10 01**              © ISO Properties, Inc.,  2000              **Page 1 of 1**    ☐

6

# EXTERIOR INSULATION AND FINISH SYSTEM ENDORSEMENT

This endorsement modifies insurance under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Unless so indicated below, the "Exterior Insulation and Finish System Hazard" is included within the Limit of Insurance.

A.   If so indicated, the "Exterior Insulation and Finish System Hazard" is limited to:

$ _____   Aggregate

$ _____   Deductible Per Claim

☒  B.   If so indicated, this insurance does not apply to "Property Damage" arising out of the "Exterior Insulation and Finish System Hazard".

Definition

1.   "Exterior Insulation and Finish Hazard" means the design, manufacture, construction, fabrication, preparation, installation, application, maintenance or repair, including remodeling, service, correction, or replacement, of an "exterior insulation and finish system" (commonly referred to as synthetic stucco) or any part thereof, or any substantially similar system or any part thereof, including the application or use of conditioners, primers, accessories, flashings, coatings, caulkings or sealants in connection with such a system when performed by you or;

Any work or operations with respect to any exterior component, fixture or feature of any structure if an "exterior insulation and finish system" is used on any part of that structure when performed by you or on your behalf.

2.   "Exterior Insulation and Finish System" means;

a)   a rigid or semi-rigid insulation board made of expanded polystyrene or other materials, and

b)   the adhesive and/or mechanical fasteners used to attach the insulation board to the substrate, and

c)   a reinforced base coat, and

d)   a finish coat providing surface texture and color.

Insurance provided by this endorsement shall not apply if "your work" was completed more than 365 days prior to the date of the "occurrence".

ML 10 01 (05 99)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

## COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

### 2. Exclusions

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

**(i)** "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

**(ii)** "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

9

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

**(b)** At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

**(c)** Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

**(i)** Any insured; or

**(ii)** Any person or organization for whom you may be legally responsible; or

**(d)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

**(i)** "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

**(ii)** "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

**(iii)** "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

**(e)** At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

**(2)** Any loss, cost or expense arising out of any:

**(a)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(b)** Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

     © ISO Properties, Inc., 2003         □

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged; or

    (b) the operation of any of the machinery or equipment listed in Paragraph f.(2) or f.(3) of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

© ISO Properties, Inc., 2003

CG 00 01 12 04   □

*l(*

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

Exclusions c. through n. do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III – Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

**2. Exclusions**

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

   © ISO Properties, Inc., 2003

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

**(1)** Advertising, broadcasting, publishing or telecasting;

**(2)** Designing or determining content of websites for others; or

**(3)** An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-Related**

Any loss, cost or expense arising out of any:

**(1)** Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**(2)** Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

**(1)** War, including undeclared or civil war;

© ISO Properties, Inc., 2003

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

## COVERAGE C MEDICAL PAYMENTS

### 1. Insuring Agreement

a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the "coverage territory" and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b. We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

f. **Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

g. **Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS – COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

a. All expenses we incur.

b. Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

d. All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

e. All costs taxed against the insured in the "suit".

f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

 © ISO Properties, Inc., 2003

14

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

   a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

   b. This insurance applies to such liability assumed by the insured;

   c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

   d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

   e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

   f. The indemnitee:

     (1) Agrees in writing to:

       (a) Cooperate with us in the investigation, settlement or defense of the "suit";

       (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

       (c) Notify any other insurer whose coverage is available to the indemnitee; and

       (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

     (2) Provides us with written authorization to:

       (a) Obtain records and other information related to the "suit"; and

       (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph **2.b.(2)** of Section I – Coverage A – Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

   a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

   b. The conditions set forth above, or the terms of the agreement described in Paragraph **f.** above, are no longer met.

**SECTION II – WHO IS AN INSURED**

1. If you are designated in the Declarations as:

   a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

   b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

   c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

   e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

     (1) "Bodily injury" or "personal and advertising injury":

*15*

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**SECTION III – LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard".

4. Subject to 2. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

a. Damages under Coverage A; and

b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to **5.** above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

**3. Legal Action Against Us**

No person or organization has a right under this Coverage Part:

**a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

**b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in **c.** below.

**b. Excess Insurance**

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

© ISO Properties, Inc., 2003

*19*

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section I – Coverage A – Bodily Injury And Property Damage Liability.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

5. **Premium Audit**

a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

6. **Representations**

By accepting this policy, you agree:

a. The statements in the Declarations are accurate and complete;

b. Those statements are based upon representations you made to us; and

c. We have issued this policy in reliance upon your representations.

7. **Separation Of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom claim is made or "suit" is brought.

8. **Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

*18*

**9. When We Do Not Renew**

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

## SECTION V – DEFINITIONS

1. "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

   a. Notices that are published include material placed on the Internet or on similar electronic means of communication; and

   b. Regarding web-sites, only that part of a web-site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

2. "Auto" means:

   a. A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

   b. Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged.

   However, "auto" does not include "mobile equipment".

3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

4. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above; or

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in a. above or in a settlement we agree to.

5. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

6. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

7. "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement;

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

© ISO Properties, Inc., 2003

CG 00 01 12 04    □

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

  **(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

  **(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

  **a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

  **b.** While it is in or on an aircraft, watercraft or "auto"; or

  **c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

  **a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

  **b.** Vehicles maintained for use solely on or next to premises you own or rent;

  **c.** Vehicles that travel on crawler treads;

  **d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    **(1)** Power cranes, shovels, loaders, diggers or drills; or

    **(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

  **e.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    **(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    **(2)** Cherry pickers and similar devices used to raise or lower workers;

  **f.** Vehicles not described in **a.**, **b.**, **c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

    **(1)** Equipment designed primarily for:

      **(a)** Snow removal;

      **(b)** Road maintenance, but not construction or resurfacing; or

      **(c)** Street cleaning;

    **(2)** Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

    **(3)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

  **a.** False arrest, detention or imprisonment;

  **b.** Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

19. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

20. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

© ISO Properties, Inc., 2003     □

21. "Your product":

   **a.** Means:

     **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

      **(a)** You;

      **(b)** Others trading under your name; or

      **(c)** A person or organization whose business or assets you have acquired; and

     **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

   **b.** Includes

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

     **(2)** The providing of or failure to provide warnings or instructions.

   **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

22. "Your work":

   **a.** Means:

     **(1)** Work or operations performed by you or on your behalf; and

     **(2)** Materials, parts or equipment furnished in connection with such work or operations.

   **b.** Includes

     **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

     **(2)** The providing of or failure to provide warnings or instructions.

 © ISO Properties, Inc., 2003

22

COMMERCIAL GENERAL LIABILITY
CG 00 67 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – VIOLATION OF STATUTES THAT GOVERN E-MAILS, FAX, PHONE CALLS OR OTHER METHODS OF SENDING MATERIAL OR INFORMATION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage A – Bodily Injury And Property Damage Liability:

   **2. Exclusions**

   This insurance does not apply to:

   **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

   "Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

   **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

**B.** The following exclusion is added to Paragraph **2., Exclusions** of Section I – Coverage B – Personal And Advertising Injury Liability:

   **2. Exclusions**

   This insurance does not apply to:

   **DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

   "Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

   **a.** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law; or

   **b.** The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

   **c.** Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

23

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

**(1)** A person arising out of any:

    **(a)** Refusal to employ that person;

    **(b)** Termination of that person's employment; or

    **(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

**(2)** The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(a)**, **(b)**, or **(c)** above is directed.

This exclusion applies:

**(1)** Whether the insured may be liable as an employer or in any other capacity; and

**(2)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

2+

COMMERCIAL GENERAL LIABILITY
CG 21 96 03 05

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# SILICA OR SILICA-RELATED DUST EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph 2., **Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Bodily injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, or ingestion of, "silica" or "silica-related dust".

**b.** "Property damage" arising, in whole or in part, out of the actual, alleged, threatened or suspected contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**c.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**B.** The following exclusion is added to Paragraph 2., **Exclusions** of **Section I – Coverage B – Personal And Advertising Injury Liability:**

**2. Exclusions**

This insurance does not apply to:

**Silica Or Silica-Related Dust**

**a.** "Personal and advertising injury" arising, in whole or in part, out of the actual, alleged, threatened or suspected inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, "silica" or "silica-related dust".

**b.** Any loss, cost or expense arising, in whole or in part, out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to or assessing the effects of, "silica" or "silica-related dust", by any insured or by any other person or entity.

**C.** The following definitions are added to the **Definitions** Section:

**1.** "Silica" means silicon dioxide (occurring in crystalline, amorphous and impure forms), silica particles, silica dust or silica compounds.

**2.** "Silica-related dust" means a mixture or combination of silica and other dust or particles.

© ISO Properties, Inc., 2004

**COMMERCIAL GENERAL LIABILITY**
CG 22 34 07 98

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION – CONSTRUCTION MANAGEMENT ERRORS AND OMISSIONS

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The following exclusion is added to Paragraph **2.**, **Exclusions of Section I – Coverage A – Bodily Injury And Property Damage Liability and Paragraph 2., Exclusions of Section I – Coverage B – Personal And Advertising Injury Liability:**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of:

**1.** The preparing, approving, or failure to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications by any architect, engineer or surveyor performing services on a project on which you serve as construction manager; or

**2.** Inspection, supervision, quality control, architectural or engineering activities done by or for you on a project on which you serve as construction manager.

This exclusion does not apply to "bodily injury" or "property damage" due to construction or demolition work done by you, your "employees" or your subcontractors.

26

COMMERCIAL GENERAL LIABILITY
CG 22 94 10 01

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – DAMAGE TO WORK PERFORMED BY SUBCONTRACTORS ON YOUR BEHALF

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion l. of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

**2. Exclusions**

This insurance does not apply to:

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

27

POLICY NUMBER:

COMMERCIAL GENERAL LIABILITY
CG 24 26 07 04

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT OF INSURED CONTRACT DEFINITION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Paragraph **9.** of the **Definitions** Section is replaced by the following:

9. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement;

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization, provided the "bodily injury" or "property damage" is caused, in whole or in part, by you or by those acting on your behalf. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

   Paragraph **f.** does not include that part of any contract or agreement:

   (1) That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

   (2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

     (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

     (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (3) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

CG 24 26 07 04

© ISO Properties, Inc., 2004

Page 1 of 1   ☐

POLICY NUMBER:                                             **COMMERCIAL GENERAL LIABILITY**

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# ARKANSAS CHANGES – MULTI-YEAR POLICIES

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

The following is added to the Common Policy Conditions:

**G. MULTI-YEAR POLICIES**

We may issue this policy for a term in excess of twelve months with the premium adjusted on an annual basis in accordance with our rates and rules.

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

    Copyright, Insurance Services Office, Inc., 1998       □

30

IL 00 21 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

> COMMERCIAL AUTOMOBILE COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> FARM COVERAGE PART
> LIQUOR LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> POLLUTION LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> PROFESSIONAL LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "Special nuclear material" or "by-product material".

   "Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

 © ISO Properties, Inc., 2001

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  (a) Any "nuclear reactor";

  (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

  (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

  © ISO Properties, Inc., 2001   ☐

IL 02 31 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# ARKANSAS CHANGES – CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    FARM UMBRELLA LIABILITY POLICY
    LIQUOR LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART

**A.** Paragraph **5.** of the **Cancellation** Common Policy Condition is replaced by the following:

  **5.a.** If this policy is cancelled, we will send the first Named Insured any premium refund due.

    **b.** We will refund the pro rata unearned premium if the policy is:

      **(1)** Cancelled by us or at our request;

      **(2)** Cancelled but rewritten with us or in our company group;

      **(3)** Cancelled because you no longer have an insurable interest in the property or business operation that is the subject of this insurance; or

      **(4)** Cancelled after the first year of a pre-paid policy that was written for a term of more than one year.

    **c.** If the policy is cancelled at the request of the first Named Insured, other than a cancellation described in **b.(2)**, **(3)** or **(4)** above, we will refund 90% of the pro rata unearned premium. However, the refund will be less than 90% of the pro rata unearned premium if the refund of such amount would reduce the premium retained by us to an amount less than the minimum premium for this policy.

    **d.** The cancellation will be effective even if we have not made or offered a refund.

    **e.** If the first Named Insured cancels the policy, we will retain no less than $100 of the premium, subject to the following:

      **(1)** We will retain no less than $250 of the premium for the Boiler And Machinery Coverage Part.

      **(2)** We will retain the premium developed for any annual policy period for the General Liability Classifications, if any, shown in the Declarations.

      **(3)** If the Commercial Auto Coverage Part covers only snowmobiles or golfmobiles, we will retain $100 or the premium shown in the Declarations, whichever is greater.

      **(4)** If the Commercial Auto Coverage Part covers an "auto" with a mounted amusement device, we will retain the premium shown in the Declarations for the amusement device and not less than $100 for the auto to which it is attached.

**B.** The following is added to the **Cancellation** Common Policy Condition:

© ISO Properties, Inc., 2001

### 7. Cancellation Of Policies In Effect More Than 60 Days

a. If this policy has been in effect more than 60 days or is a renewal policy, we may cancel only for one or more of the following reasons:

(1) Nonpayment of premium;

(2) Fraud or material misrepresentation made by you or with your knowledge in obtaining the policy, continuing the policy or in presenting a claim under the policy;

(3) The occurrence of a material change in the risk which substantially increases any hazard insured against after policy issuance;

(4) Violation of any local fire, health, safety, building or construction regulation or ordinance with respect to any insured property or its occupancy which substantially increases any hazard insured against under the policy;

(5) Nonpayment of membership dues in those cases where our by-laws, agreements or other legal instruments require payment as a condition of the issuance and maintenance of the policy; or

(6) A material violation of a material provision of the policy.

b. Subject to Paragraph 7.c., if we cancel for:

(1) Nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy at least 10 days before the effective date of cancellation.

(2) Any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy at least 20 days before the effective date of cancellation.

c. The following applies to the Farm Umbrella Liability Policy, Commercial Liability Umbrella Coverage Part and the Commercial Automobile Coverage Part:

(1) If we cancel for nonpayment of premium, we will mail or deliver written notice of cancellation, stating the reason for cancellation, to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 10 days before the effective date of cancellation.

(2) If we cancel for any other reason, we will mail or deliver notice of cancellation to the first Named Insured and any lienholder or loss payee named in the policy, and any lessee of whom we have received notification prior to the loss, at least 20 days before the effective date of cancellation.

**C.** The following Condition is added and supersedes any other provision to the contrary:

**NONRENEWAL**

1. If we decide not to renew this policy, we will mail to the first Named Insured shown in the Declarations written notice of nonrenewal at least 60 days before:

a. Its expiration date; or

b. Its anniversary date, if it is a policy written for a term of more than one year and with no fixed expiration date.

However, we are not required to send this notice if nonrenewal is due to your failure to pay any premium required for renewal.

2. We will mail our notice to the first Named Insured's mailing address last known to us. If notice is mailed, proof of mailing will be sufficient proof of notice.

# MID-CONTINENT GROUP®
## PRIVACY NOTICE
## AND
## NOTICE OF INFORMATION PRACTICES

The member of Mid-Continent Group ("Mid-Continent," including those companies listed at the end of this Notice) respect your right to privacy.

We want you to know about our procedures for protecting your privacy and your rights and responsibilities regarding information we receive about you. We want you to understand how we gather information about you, how we protect it, and how you can help ensure its accuracy. Although we may provide this Notice as information to additional persons, the terms of this Notice apply to those individuals who inquire about or obtain insurance from Mid-Continent primarily for personal, family or household purposes, and certain group insurance plans. We will provide our customers with a copy of the most recent notice of our privacy policy at least annually and more often if we make any changes affecting their rights under our privacy policy. This Notice applies to current and former customers of Mid-Continent, but does not in any way imply or affect insurance coverage. You can find the online version of this Notice on our web site at www.mcg-ins.com.

Because Mid-Continent does not share your information outside of permitted exceptions, there is no need for you to take any action under this Notice. If we change our practices in the future, we will advise you and, if applicable, enable you to "opt-out" of certain sharing.

## 1.    What kind of information is collected about you?

We get most of our information about you directly from you, such as your name, address, social security number, income level and certain other financial information, on insurance applications and other forms that you provide to us. While in some cases the information you provide to your insurance representative during the insurance application process gives us all the information we need to evaluate you or your property for insurance, there are instances when we may need additional information or may need to verify information you have given us. In those cases, we may obtain information from outside sources at our own expense.

It is common for an insurance company to ask an independent source to verify and supplement information given on an insurance application. There are many such independent companies, commonly called "consumer reporting agencies," which are in the business of providing independent information to insurance and other financial services companies. We will treat the information we receive about you from an independent reporting agency in accordance with the terms of this Notice. Upon our receipt of your written request sent to the address set forth in Section 5, we will inform you of the name and address of any agency we have used to prepare a report on you so that you can contact the agency.

Once you have been an insured customer of ours for a period of time, your record may contain information related to our experiences and transactions with you, such as insurance policy coverage, premiums and payment history, and any claims you make under your insurance policy. For example, information collected by a claims representative and any policy or fire report will be retained by us. Any information that we collect in connection with an insurance claim will be kept in accordance with this Notice.

Each company within Mid-Continent Group may disclose information about you to an affiliate regarding its transactions and experiences with you (such as your payment or claims history). We do not currently share other credit-related information, except as permitted or required by law.

Finally, we do use "cookies" when you interact with our web sites to make that experience easy and meaningful for you. When you visit our web site, our web server sends a cookie to your computer. A cookie is an electronically transmitted file that holds small pieces of information. When you navigate through our web site, your browser "requests" pages for you to view, and that request will include the information stored in the cookie we previously sent to your computer. This process is like an electronic "handshake" between our system and your computer; the information exchanged allows us to recognize your browser.

Cookies are used to collect and store only the following information: the visitor's domain name, the Internet address of the web site from which the visitor linked directly to our web site, the pages of our site that the visitor views and the length of time spent on each page, browser and operating system platform type, and the date and time the visitor accessed our site.

Cookies, as well as data taken from them, do not identify you personally. They merely recognize your browser. Unless you choose to identify yourself to us, either by responding to a promotional offer, buying a policy, or registering for an online service, you remain anonymous.

Session cookies exist only during an online session with Mid-Continent. Session cookies allow you to conduct transactions or requests on our web site. Without the session cookie information, we would not be able to complete your web transactions securely. Session cookies help us make sure you are who you say you are after you have logged in. We do not sell this or any other information about you to other web sites, merchants or financial institutions.

2.    **What do we do with information about you?**

Information about you will be kept in our insurance policy records. We will refer to and use that information for purposes related to issuing and servicing insurance policies and settling claims. Generally, personal information about you in our records will not be disclosed by us to any external organization without your prior authorization. However, we may, as permitted by law, share information about you contained in our files with certain persons or organizations such as:

> your insurance representative,

> persons who represent you in a fiduciary capacity, including your attorney or trustee, or who have a legal interest in your insurance policy,

> adjusters, appraisers, auditors, investigators and attorneys,

> persons or organizations who need the information to perform a business, professional or insurance function for us,

> other insurance companies, agents or consumer reporting agencies as information is needed in connection with any insurance application, policy or claim involving you,

> medical professionals to inform you of a medical condition of which you may not be aware,

> persons or organizations that conduct research, including actuarial or underwriting studies, provided that no individual information may be identified in any research study report,

> persons or organizations that perform marketing services on our behalf or to other financial institutions with whom we have joint marketing agreements,

> our affiliated companies,

> to a court, state insurance department or other government agency pursuant to a summons, court order, search warrant, subpoena, or as otherwise required by law or regulation.

3.    **Who has access to your information?**

Mid-Continent currently incorporates a system of passwords and other appropriate physical, electronic and procedural safeguards to protect against unauthorized access to potentially private information. We will educate our employees about the terms of this Notice and the importance of confidentiality and customer privacy. Employees who gain unauthorized access or who otherwise violate our privacy policy are subject to disciplinary action up to and including termination of employment. We plan to monitor and evaluate our information security program and available security software in light of relevant changes in technology to determine ways to increase protections to the security or integrity of our records and information.

36

4. **How can you review recorded information about you?**

Generally, you have the right to review and receive a copy of the recorded personal information about you contained in our files with respect to a particular policy number, except for certain legal and medical documents. You have the further rights to request that we correct any of this information. To exercise these rights, you must send to us a notarized request at the address set forth below stating your complete name, address, insurance policy number, daytime phone number, and a copy of your driver's license or other personal identification. If you believe any information is incorrect, we will investigate and correct it if we can substantiate the error. Even if we do not correct the information, you have the right to file with us a written statement of dispute which we will include in any future disclosure of the information.

5. **How can you contact us?**

If, after reading this, you have any questions about our privacy policy, please write to us at the following address:

MID-CONTINENT GROUP
1437 S. Boulder
Suite 200
Tulsa, OK 74119
Attn: Compliance Office - Privacy

Mid-Continent Casualty Company
Mid-Continent Insurance Company
Oklahoma Surety Company

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

# EXCLUSION - INJURY OR DAMAGE FROM
# EARTH MOVEMENT

This endorsement modifies insurance provided under the following:

>    RESIDENTIAL GENERAL CONTRACTOR COMMERCIAL GENERAL LIABILITY FORM
>    COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM
>    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" arising out of, caused by, resulting from, contributed to, aggravated by, or related to earthquake, landslide, mudflow, subsidence, settling, slipping, falling away, shrinking, expansion, caving in, shifting, eroding, rising, tilting or any other movement of land, earth or mud.

All other conditions remain unchanged

ML 10 03 (09 04)                                                                            **Page 1 of 1**

37

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**


# FUNGUS, MILDEW AND MOLD EXCLUSION


This insurance does not apply to:

1.  "Bodily injury", "property damage", "personal or advertising injury" or "medical payments" arising out of, resulting from, caused by, contributed to, attributed to, or in any way related to any fungus, mildew, mold or resulting allergens;

2.  Any costs or expenses associated, in any way, with the abatement, mitigation, remediation, containment, detoxification, neutralization, monitoring, removal, disposal or any obligation to investigate or assess the presence or effects of any fungus, mildew, mold or resulting allergens; or

3.  Any obligation to share with or repay any person, organization or entity, related in any way to items **1** and **2.**

ML 12 17 (04 01)                                                                                                          **Page 1 of 1**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION --- ASBESTOS

This endorsement modifies insurance provided under the following:

    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

This insurance does not apply to "bodily injury", "property damage", "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of asbestos, asbestos fibers or products containing asbestos, provided that the injury or damage is caused or contributed to by the hazardous properties of asbestos. This includes:

    a)  Any supervision, instructions, recommendations, warnings or advise given or which should have been given in connection with the above;  and

    b)  Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

ML 13 44 (03 97)

39

# COMMERCIAL GENERAL LIABILITY

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EXCLUSION - LEAD

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**OWNERS AND CONTRACTORS LIABILITY COVERAGE PART**
**PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART**

This insurance does not apply to "bodily injury," "property damage," "personal injury" or "advertising injury" arising out of the actual or alleged presence or actual, alleged or threatened dispersal of lead, lead particles or products containing lead, provided that the injury or damage is caused or contributed to by the hazardous properties of lead. This includes:

a.     Any supervision, instructions, recommendations, warnings or advice given or which should have been given in connection with the above; and

b.     Any obligation to share damages with or repay someone else who must pay damages because of such injury or damage.

ML 14 39 (04 97)

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**

| | |
|---|---|
| Regarding | J-MCDANIEL CONST V MID-CONTINENT CASUALTY CO ET AL |
| Plaintiff's Attorney | JOHN D. PETTIE |
| Case Number | 60CV-12-2277 |

## SUMMONS

| | |
|---|---|
| Plaintiff's Attorney: | JOHN D. PETTIE |
| | 425 WEST CAPITOL AVENUE |
| | SUITE 3700 |
| | LITTLE ROCK, AR 72201 |

| | |
|---|---|
| The State of Arkansas to Defendant: | MID-CONTINENT CASUALTY COMPANY |
| | UNKNOWN |
| | UNKNOWN, AR 00000 |

1. You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.

2. The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a written answer or a motion under Rule 12 of the Arkansas Rules of Civil Procedure and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

    A. It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.
    B. It must be filed in the court clerk's office within 30 days from the day you were served with this summons.

3. If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4. Additional notices:

Witness my hand and seal of said court dated 05/11/2012

LARRY CRANE, CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY



**EXHIBIT**

A-3

401 W MARKHAM
LITTLE ROCK, AR  72201



Sarah Besancon, DC

---

## SHERIFF'S RETURN

STATE OF ARKANSAS  (COUNTY OF PULASKI)

On this ____day of_____, 20___ at _____o'clock __am/pm, I have duly served the summons by delivering a copy thereof (or stating the substance thereof), together with a copy of the complaint, to _____ such person being:

CHECK APPLICABLE SQUARE:

❑   the person named therein as defendant
❑   some person residing at defendant's dwelling house or usual place of abode who is at least
       fourteen (14) years of age, namely:_____
❑   the duly authorized agent for service of process for the defendant,
       namely:_____.
❑   OTHER:_____

_____
Officer

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**


Regarding         J-MCDANIEL CONST V MID-CONTINENT CASUALTY CO ET AL
Plaintiff's Attorney   JOHN D. PETTIE
Case Number       60CV-12-2277


## SUMMONS


Plaintiff's Attorney:          JOHN D. PETTIE
                               425 WEST CAPITOL AVENUE
                               SUITE 3700
                               LITTLE ROCK, AR  72201


The State of Arkansas to       SOUTHWEST INSURANCE CENTER CORP; AKA INSURANCE
Defendant:                     CENTER, INC.
                               UNKNOWN
                               UNKNOWN, AR  00000


1.  You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.

2.  The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a written answer or a motion under Rule 12 of the Arkansas Rules of Civil Procedure and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

    A.  It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.
    B.  It must be filed in the court clerk's office within 30 days from the day you were served with this summons.

3.  If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4.  Additional notices:


Witness my hand and seal of said court dated 05/11/2012


LARRY CRANE,  CIRCUIT CLERK



EXHIBIT

A-4

CIRCUIT COURT OF PULASKI COUNTY
401 W MARKHAM
LITTLE ROCK, AR  72201



Sarah Besancon, DC

---

### SHERIFF'S RETURN

STATE OF ARKANSAS  (COUNTY OF PULASKI)

On this ____day of_____, 20___ at _____o'clock __am/pm, I have duly served the summons by delivering a copy thereof (or stating the substance thereof), together with a copy of the complaint, to _____ such person being:

CHECK APPLICABLE SQUARE:

❑   the person named therein as defendant
❑   some person residing at defendant's dwelling house or usual place of abode who is at least fourteen (14) years of age, namely:_____
❑   the duly authorized agent for service of process for the defendant, namely:_____.
❑   OTHER:_____

_____
Officer

**IN THE CIRCUIT COURT OF PULASKI COUNTY, ARKANSAS**
**HON. TIM FOX - 6TH DIVISION PULASKI CIRCUIT COURT**


Regarding          J-MCDANIEL CONST V MID-CONTINENT CASUALTY CO ET AL
Plaintiff's Attorney  JOHN D PETTIE
Case Number       60CV-12-2277


## SUMMONS

Plaintiff's Attorney:          JOHN D PETTIE
                              425 WEST CAPITOL AVE
                              SUITE 3700
                              LITTLE ROCK, AR  72201

The State of Arkansas to      JOHN DOES 1 THROUGH 40
Defendant:                    UNKNOWN
                              UNKNOWN, AR  00000

1.  You are hereby notified that a lawsuit has been filed against you; the relief asked is stated in the attached complaint.

2.  The attached complaint will be considered admitted by you and a judgment by default may be entered against you for the relief asked in the complaint unless you file a written answer or a motion under Rule 12 of the Arkansas Rules of Civil Procedure and thereafter appear and present your defense. Your pleading or answer must meet the following requirements:

   A.  It must be in writing, and otherwise comply with the Arkansas Rules of Civil Procedure.
   B.  It must be filed in the court clerk's office within 30 days from the day you were served with this summons.

3.  If you desire to be represented by an attorney you should immediately contact your attorney so that an answer can be filed for you within the time allowed.

4.  Additional notices:


Witness my hand and seal of said court dated 05/11/2012


LARRY CRANE,  CIRCUIT CLERK
CIRCUIT COURT OF PULASKI COUNTY



EXHIBIT

A-5

401 W MARKHAM
LITTLE ROCK, AR  72201



Sarah Besancon, DC

---

### SHERIFF'S RETURN

STATE OF ARKANSAS  (COUNTY OF PULASKI)

On this _____day of_____, 20___ at _____o'clock __am/pm, I have duly served the summons by delivering a copy thereof (or stating the substance thereof), together with a copy of the complaint, to _____ such person being:

CHECK APPLICABLE SQUARE:

❑   the person named therein as defendant
❑   some person residing at defendant's dwelling house or usual place of abode who is at least
      fourteen (14) years of age, namely:_____
❑   the duly authorized agent for service of process for the defendant,
      namely:_____.
❑   OTHER:_____

_____
Officer

ELECTRONICALLY FILED
2012-Aug-01 16:48:58
60CV-12-2277

IN THE CIRCUIT COURT OF PULASKI COUNTY ARKANSAS
6th DIVISION

J-MCDANIEL CONSTRUCTION CO., INC.                                      PLAINTIFF

VS.                                    CASE NO. 60CV-2012-2277

MID-CONTINENT CASUALTY COMPANY,
SOUTHWEST INSURANCE CENTER CORP.,
d/b/a INSURANCE CENTER, INC., and
JOHN DOES 1 THROUGH 40                                                 DEFENDANTS

### VOLUNTARY DISMISSAL OF SEPARATE DEFENDANT
### SOUTHWEST INSURANCE CENTER CORP., d/b/a INSURANCE CENTER, INC.

Comes now the Plaintiff, J-McDaniel Construction Co., Inc. ("Plaintiff"), by and through

its attorneys, Dover Dixon Horne PLLC, and pursuant to Ark. R. Civ. P. 41(a), seeks the Voluntary

Dismissal of Separate Defendant Southwest Insurance Center Corp., d/b/a Insurance Center,

Inc., from the above-captioned case, without prejudice.

WHEREFORE Plaintiff prays that the above-named Separate Defendant be dismissed

without prejudice.

J-McDaniel Construction Co., Inc., Plaintiff
By its attorneys:
Dover Dixon Horne PLLC
425 W. Capitol Avenue, Suite 3700
Little Rock, Arkansas 72201
(501) 375-9151

By: _____
John D. Pettie (2009188)

EXHIBIT

A-6

## CERTIFICATE OF SERVICE

I, John D. Pettie, do hereby certify that a true and correct copy of the foregoing was served, this 1st day of August, 2012, via U.S. Mail, postage prepaid, electronic mail and/or facsimile transmission, upon the following:

Southwest Insurance Center Corp.
2200 Hidden Valley Drive
Little Rock, Arkansas 72212

Mid-Continent Casualty Company
c/o CT Corporation
124 West Capitol Ave., Suite 1900
Little Rock, Arkansas  72201

John D. Pettie

# DOVER DIXON HORNE PLLC

**Attorneys at Law**

ALLAN W. HORNE
CYRIL HOLLINGSWORTH
THOMAS S. STONE
STEVE L. RIGGS
MICHAEL O. PARKER
WILLIAM E. BISHOP
JOSEPH H. PURVIS
CHARLES W. REYNOLDS
JOHN B. PEACE
WILLIAM DEAN OVERSTREET

MICHAEL G. SMITH+
GARY B. ROGERS
JAMES PAUL BEACHBOARD=
W. MICHAEL REIF
MARK H. ALLISON
MONTE D. ESTES
CAL McCASTLAIN
WILLIAM C. BIRD III
JOHN D. PETTIE
CARL F. (TREY) COOPER III

425 W. CAPITOL AVE STE 3700
LITTLE ROCK, AR 72201-3465
TELEPHONE (501) 375-9151
FACSIMILE (501) 375-6484
www.doverdixonhorne.com

DARRELL D. DOVER (1933-2009)
PHILIP E. DIXON (1932-2005)

OF COUNSEL
GARLAND W. BINNS, JR.

= ALSO LICENSED IN TENNESSEE
+ ALSO LICENSED IN TEXAS

TTT MERITAS LAW FIRMS WORLDWIDE

August 1, 2012

**_VIA HAND DELIVERY_**

Mr. Larry Crane
Pulaski County Circuit Clerk
401 West Markham Street
Little Rock, AR  72201

RE:   J-McDaniel Construction Co., Inc. v. Mid-Continent Casualty Company, et al.
Pulaski County Circuit Court Case No. 60CV-2012-2277

Dear Mr. Crane:

Enclosed please find an original and two (2) copies of a "Voluntary Dismissal of Separate Defendant Southwest Insurance Center Corp., d/b/a Insurance Center, Inc.", which I am submitting to you for filing in regard to the above referenced matter.  Please file the original and return the file-marked copies to me at your earliest convenience.

Thank you for your assistance.  Should you have any questions, please feel free to call.

Sincerely,

DOVER DIXON HORNE PLLC

Jessica Richey
Legal Assistant

/jlr

Cc:   Southwest Insurance Center Corp.
Mid-Continent Casualty Company

ELECTRONICALLY FILED
2012-Aug-07 10:33:54
60CV-12-2277

## IN THE CIRCUIT COURT OF PULASKI COUNTY ARKANSAS
### 6th DIVISION

J-MCDANIEL CONSTRUCTION CO., INC.                                                PLAINTIFF

VS.                                          CASE NO. 60CV-2012-2277

MID-CONTINENT CASUALTY COMPANY,
SOUTHWEST INSURANCE CENTER CORP.,
d/b/a INSURANCE CENTER, INC., and
JOHN DOES 1 THROUGH 40                                                DEFENDANTS

### ORDER

On this day came before the Court for its consideration the Voluntary Dismissal sought by Plaintiff J-McDaniel Construction Co., Inc., pursuant to Ark. R. Civ. P. 41(a), seeking to dismiss the Separate Defendant Southwest Insurance Center Corp., d/b/a Insurance Center, Inc., without prejudice. Based on the pleadings and all other matters before it, the Court finds that said dismissal should be and hereby is granted, and said Separate Defendant IS dismissed without prejudice.

_____
CIRCUIT JUDGE

_____
DATE

Order prepared by:
Dover Dixon Horne PLLC
425 West Capitol Avenue, Suite 3700
Little Rock, Arkansas 72201
(501) 375-9151
*Attorneys for Plaintiff*

**EXHIBIT**

A-7

IN THE CIRCUIT COURT OF PULASKI COUNTY, STATE OF ARKANSAS
SIXTH DIVISION

J-MCDANIEL CONSTRUCTION CO., INC.                   PLAINTIFF

**ELECTRONICALLY FILED**

VS.                    CASE NO. 60CV-2012-2277          AUG **2 1** 2012

TIME:_____

CASE #:_____

MID-CONTINENT CASUALTY COMPANY,
SOUTHWEST INSURANCE CENTER CORP.,
d/b/a INSURANCE CENTER, INC., and
JOHN DOES 1 THROUGH 40                            DEFENDANT

## ANSWER TO COMPLAINT

Defendant, Mid-Continent Casualty Company, for its answer to the complaint of plaintiff J-McDaniel Construction Co., Inc., states that it denies each and every allegation of the plaintiff's complaint, except those explicitly admitted herein.  More specifically, defendant states:

1.     Defendant admits the allegations of paragraph 1 of the Complaint.

2.     Defendant admits the allegations of paragraph 2 of the Complaint.

3.     Defendant is without sufficient information to admit or deny the allegations of paragraph 3 of the Complaint and, therefore, denies the same.

4.     Defendant admits that an affidavit is attached to the Complaint as Exhibit "A," but is without sufficient information to admit or deny the remaining allegations of paragraph 4 of the Complaint and, therefore, denies the same.

5.     Defendant states that paragraph 5 of the Complaint recites legal conclusions to which no response is required.  To the extent a response is required, Defendant admits that venue is proper in Pulaski County, but denies the remaining allegations of paragraph 5 of the Complaint.

1136108v1

**EXHIBIT**

tabbies®

A-8

6.     Defendant is without sufficient information to admit or deny the allegations of the first two sentences of paragraph 6 of the Complaint regarding plaintiff's business operations and, therefore, denies the same.  Defendant denies the final sentence of paragraph 6 of the Complaint.  Pleading affirmatively, Mid-Continent Casualty Company states that the policy attached as Exhibit "B" to the Complaint was not issued by it, but by Oklahoma Surety Company.

7.     Defendant states that paragraph 7 of the Complaint recites incorrect and unsupported legal conclusions to which no response is required.  To the extent a response is required, defendant denies the allegations of paragraph 7 of the Complaint.

8.     Defendant admits that J-McDaniel Construction Co., Inc. was a party defendant, along with others, to a lawsuit filed by David K. Conrad and Susan E. Conrad in Pulaski County Circuit Court, State of Arkansas, which was pending as case no. CV-2009-7490 ("underlying lawsuit"), and that the underlying lawsuit arose from the purchase by Mr. and Mrs. Conrad of a home built by J-McDaniel Construction Co., Inc.

9.     Defendant states the complaint in the underlying lawsuit asserted numerous factual allegations and theories of recovery against plaintiff, J-McDaniel Construction Co., Inc., but denies that any of the allegations were covered by a policy of insurance issued by it.  Pleading affirmatively, Mid-Continent Casualty Company states that Oklahoma Surety Company issued the insurance policy attached as Exhibit "B" to the Complaint, and that, in any event, the damages

2

alleged by David K. Conrad and Susan E. Conrad fall within the scope of the policy exclusions or are otherwise not covered by the attached insurance policy.

10. Defendant admits a policy of insurance was attached as Exhibit "B" to the Complaint, but denies the remaining allegations of paragraph 10 of the Complaint. Pleading affirmatively, Mid-Continent Casualty Company states that the policy attached as Exhibit "B" to the Complaint was not issued by it, but by Oklahoma Surety Company, and that the allegations of the lawsuit filed by the Conrads fall within the scope of the policy exclusions or are otherwise not covered by the attached insurance policy.

11. Defendant denies the allegations of paragraph 11 of the Complaint.

12. Defendant denies the allegations of paragraph 12 of the Complaint.

13. Defendant admits it did not provide a defense or coverage, but denies the remaining allegations of paragraph 13 of the Complaint. Pleading affirmatively, Mid-Continent Casualty Company states that the policy attached as Exhibit "B" to the Complaint was not issued by it, but by Oklahoma Surety Company, and that the allegations of the lawsuit filed by the Conrads fall within the scope of the policy exclusions or are otherwise not covered by the attached insurance policy.

14. Defendant is without sufficient information to admit or deny the allegations of paragraph 14 of the Complaint and, therefore, denies the same.

15. Defendant is without sufficient information to admit or deny the allegations of the first sentence of paragraph 15 of the Complaint and, therefore,

denies the same.  Defendant denies that it should reimburse J-McDaniel anything, denies that the claim asserted by the Conrads was a covered claim, and is without sufficient information to admit or deny the remaining allegations of the second sentence of paragraph 15 of the Complaint and, therefore, denies the same.

16.     Defendant is without sufficient information to admit or deny the allegations of paragraph 16 of the Complaint and, therefore, denies the same.

17.     Defendant is without sufficient information to admit or deny the allegations of paragraph 17 of the Complaint and, therefore, denies the same.

18.     Defendant states that paragraph 18 of the Complaint recites unsupported legal conclusions to which no response is required.  To the extent a response is required, defendant is without sufficient information to admit or deny the allegations of paragraph 18 of the Complaint and, therefore, denies the same. Pleading affirmatively, defendant states that no justiciable controversy is alleged and that plaintiff has not established all the requirements necessary for the Court to enter a declaratory judgment.

19.     Defendant states that paragraph 19 of the Complaint recites legal conclusions to which no response is required.  To the extent a response is required, defendant states that the terms of Ark. Code Ann. § 16-111-111 states: "[i]n any proceeding under this chapter, the court may make such award of costs as may seem equitable and just."  Pleading affirmatively, defendant states that no award of costs against it is just or equitable given that it was not a party to the policy

attached to the Complaint as Exhibit "B" and the policy attached does not provide coverage for the allegations of the claim made against the plaintiff by the Conrads.

20.     Defendant states that paragraph 20 of the Complaint recites unsupported and incorrect legal conclusions to which no response is required.  To the extent a response is required, defendant denies the allegations of paragraph 20 of the Complaint.  Pleading affirmatively, defendant states that plaintiff's allegations do not bring it within the terms of Ark. Code Ann. § 23-79-208 and § 23-79-209.  Pleading affirmatively, defendant also states that plaintiff does not attach any of the pleadings filed by the Conrads or any written demand upon which its claim is based as required by Ark. R. Civ. P. 10(d).

21.     Defendant states that paragraph 21 of the Complaint recites unsupported and incorrect legal conclusions to which no response is required.  To the extent a response is required, defendant denies the allegations of paragraph 21 of the Complaint.

22.     Defendant states that paragraph 22 of the Complaint recites unsupported legal conclusions to which no response is required.  To the extent a response is required, defendant states that Ark. Code Ann. § 16-22-308 speaks for itself, and it denies any recitation in paragraph 22 that is inconsistent with the terms of the statute adopted by the Arkansas General Assembly.  Pleading affirmatively, defendant states no award of fees against it is appropriate because plaintiff has not established itself as a prevailing party and because it is not a party to the policy attached as Exhibit "B" to the Complaint.

1136108v1

23. Defendant is without sufficient information to admit or deny the allegations of paragraph 23 of the Complaint and, therefore, denies the same. Pleading affirmatively, defendant denies that it is liable for the acts of any other named defendants.

24. Defendant is without sufficient information to admit or deny the allegations of paragraph 24 of the Complaint and, therefore, denies the same.

25. In response to the jury demand of plaintiff, defendant states that plaintiff has a right to a trial by jury on only those claims so triable under the law. Defendant joins and demands a trial by jury.

26. Defendant denies that plaintiff is entitled to recover a judgment against it or any of the damages sought against it in the paragraph of its Complaint beginning "WHEREFORE."

### Affirmative Defenses

By alleging each of the following defenses, Defendant does not accept the burden of proof on any issue where Arkansas law places the burden of proof on plaintiff and does not accept any burden of proof or production in absence of such a burden under the substantive law providing the defense.

27. Process is insufficient or service of process is insufficient under Ark. R. Civ. P. 12(b)(4) and (5), so plaintiff's complaint should be dismissed.

28. The Complaint fails to state facts upon which relief may be granted, and is properly dismissed pursuant to Ark. R. Civ. P. 12(b)(6).

6

29.    The Complaint should be dismissed pursuant to Ark. R. Civ. P. 12(b)(7) because plaintiff has failed to join a party under Ark. R. Civ. P. 19.

30.    Some or all of plaintiff's claims are barred by the applicable statute of limitations or by the doctrines of laches, waiver or estoppel.

31.    Payments were voluntarily made by plaintiff. Such payments made by plaintiff as a volunteer are not recoverable under Arkansas law.

32.    Mid-Continent Casualty Company states that the policy attached as Exhibit "B" to the Complaint was not issued by it, but by Oklahoma Surety Company.  Mid-Continent Casualty Company did not breach any policy and was not in contractual privity with plaintiff.

33.    The allegations of the lawsuit filed by the Conrads fall within the scope of the exclusions or are otherwise not covered by the insurance policy attached to the Complaint as Exhibit "B" and relied upon by plaintiff.

34.    Defendant is not liable for the acts of Southwest Insurance Center Corp, or John Does 1 through 40.  Such parties were not general agents and as a matter of law their liability, if any, may not be imputed to this defendant.

35.    Plaintiff's allegations do not bring it within the terms of Ark. Code Ann. § 23-79-208 and § 23-79-209, so it cannot prevail on any action under these statutes.

36.    Plaintiff's complaint is appropriately dismissed as it does not attach any written demand upon which its claim under Ark. Code Ann. § 23-79-208 and

7

§ 23-79-209 is based or any pleadings filed by the Conrads as required by Ark. R. Civ. P. 10(d).

37.     Plaintiff failed to mitigate its damages.  The Conrads, through their counsel, offered to settle this matter on or about July 6, 2009, for the sum of $65,000.00.

38.     To the extent that plaintiff's complaint is intended to assert a negligence action against it, which defendant denies, defendant asserts the following defenses:

a.     comparative fault;

b.     any injuries or damages of which the plaintiff complains were caused by plaintiff's own negligence and fault, and/or the negligence and fault of third parties, for whom this defendant has no liability or responsibility in this action, and/or resulted from an intervening proximate cause, which bars plaintiff's recovery herein;

c.     Defendant denies liability or responsibility to plaintiff in this action under any theory of liability asserted in the Complaint; and

d.     Defendant adopts all defenses available to this defendant under the Civil Justice Reform Act of 2003, codified at Ark. Code Ann. § 16-55-201 *et seq.*

39.     Defendant adopts all defenses common to the parties asserted by other parties. Defendant pleads by way of reservation all defenses and affirmative defenses available to this defendant under Rules 12(b) and 8(c) of the Arkansas Rules of Civil Procedure.

8

40.     Defendant reserves the right to amend this pleading and assert any other defenses, third-party complaints, counterclaims and cross-claims after discovery.

WHEREFORE, Defendant Mid-Continent Casualty Company, respectfully requests that this Court enter an order dismissing this lawsuit with prejudice as to it and awarding its attorneys' fees, costs and all other relief to which it is entitled.

WRIGHT, LINDSEY & JENNINGS LLP
200 West Capitol Avenue, Suite 2300
Little Rock, AR 72201-3699
(501) 371-0808
FAX: (501) 376-9422
E-MAIL: elowther@wlj.com; jhorton@wlj.com

By: _____
Edwin L. Lowther, Jr. (81107)
Johnathan D. Horton (2002055)
Attorneys for Defendant
Mid-Continent Casualty Company

## CERTIFICATE OF SERVICE

On August 21st, 2012, a copy of the foregoing was deposited in the U.S. Mail postage prepaid and addressed to:

Wm. Dean Overstreet, Esq.
John D. Pettie, Esq.
Dover, Dixon, Horne PLLC
425 W. Capitol Avenue, Suite 3700
Little Rock, AR 72201
*Attorneys for Plaintiff*

_____
Johnathan D. Horton

9